<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| KENNETH GROSS d/b/a GP SALES CORP., | |
| Plaintiff, | Civ. No. 10-1028 (DRD) |
| v. | **O P I N I O N** |
| BEST PLASTICS, LLC, | |
| Defendant. | |

*Appearances by:*

PLATZER, SWERGOLD, KARLIN, LEVIN, GOLDBERG & JASLOW, LLP
by:  Linda Mandel Gates, Esq. and Stan L. Goldberg, Esq.
Plaza 1000, Main Street, Suite 208
Voorhees, NJ 08043

    *Attorneys for Plaintiffs*

WILENTZ, GOLDMAN & SPITZER, P.A.
by:  Louis J. Semenski, Esq.
90 Woodbridge Center Drive, Suite 900, P.O. Box 10
Woodbridge, NJ 07095

    *Attorneys for Defendant*

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
by:  Michael N. Morea, Esq.
Court Plaza North
25 Main Street
Hackensack, NJ 07601

BURNS & LEVINSON, LLP
by:  Thomas T. Reith, Esq.
125 Summer Street
Boston, MA 02110

    *Attorneys for Third-Party Defendant James Dion*

## DEBEVOISE, Senior District Judge

    This matter comes before the Court on a motion submitted by Plaintiff, Kenneth Gross, requesting summary judgment pursuant to Federal Rule of Civil Procedure 56(a) on his claims against Defendant Best Plastics, LLC ("Best Plastics").  Additionally, Plaintiff asks that the Court strike the affirmative defenses asserted by Best Plastics in its Answer pursuant to Federal Rule of Civil Procedure 12(f). Finally, Plaintiff contends that the Court should dismiss the nine counterclaims asserted against him by Best Plastics pursuant to Federal Rule of Civil Procedure 12(b)(6) because those counterclaims are not pled with the requisite particularity.

    In a second pending Motion, Third-Party Defendant James Dion requests that the Court dismiss the third-party claims asserted against him by Defendant pursuant to Federal Rule of Civil Procedure 12(b)(6).

    For the reasons set forth below, Plaintiff's Motion for Summary Judgment will be granted in part and denied in part.  Defendant executed a contract in which it admitted liability of at least $6 million to Plaintiff.  While Defendant's liability, if any, in excess of that amount remains a matter of dispute, the terms of the contract between the parties require that Plaintiff be granted partial summary judgment in the amount of $6 million, minus overpayments made by Defendant after the date that contract was executed.

    Similarly, Plaintiff's request that the Court strike Defendant's affirmative defenses will be granted.  Defendant waived all affirmative defenses in the same contract in which Defendant

admitted that it was liable to Plaintiff for $6 million.  Therefore, Defendant's affirmative defenses will be stricken.

Defendant's counterclaims are not pled with the requisite particularity.  Moreover, Defendant contractually waived all counterclaims based on activity that occurred prior to September 17, 2009.  Therefore, Plaintiff's Motion to Dismiss Defendant's counterclaims will be granted.  Defendant may amend and resubmit its counterclaims within 30 days of this ruling, but in doing so must limit its allegations to activity that took place after September 17, 2009.

Finally, Defendant's claims against Third-Party Defendant James Dion will be dismissed without prejudice.  Those claims are not pled with the requisite particularity.  Defendant may submit an Amended Answer within 30 days curing, if it is able to do so, the deficiencies in its third-party claims against Mr. Dion.

## I.  BACKGROUND

Plaintiff is a seller of polypropylene resin, a product used in the production of molded plastics.[1]  Defendant is a producer of plastic storage bins that are sold on the retail market.  In making those bins, it uses the type of resin sold by Plaintiff through a process called "injection molding," in which the resin is heated and then pumped into molds where it cools and hardens into the desired shape.

From January 29, 2008 to May 22, 2009, Plaintiff sent several shipments of resin to Defendant.  Each shipment was accompanied by an invoice stating the price of the resin and requiring that, if Defendant accepted the product, it was required to render payment for the amount shown on the invoice within 60 days after receiving the resin.

---

[1] Plaintiff is the sole proprietor of a company known as "GP Sales Corporation."  All sales discussed in this ruling were made through that company.

Defendant failed to pay the amount specified on the invoices sent from January 29, 2008 to May 22, 2009.  On August 20, 2009, Plaintiff's counsel sent a letter to Defendant threatening to file suit if it did not pay outstanding balance within 10 days.

Following that letter, the parties engaged in negotiations that resulted in a Forbearance Agreement.  Under that contract, which was executed by Defendant's owner, Michel Buchbut, on September 17, 2009, Plaintiff agreed to temporarily refrain until March 31, 2010 from instituting legal proceedings to recover the balance owed by Defendant.  (Pl.'s Br. Supp. Mot. Summ. J., Ex. 5 at 3, ¶ 3.)  In exchange for that promise, Defendant agreed among other obligations to make payments of $10,000 each week starting immediately and continuing until the outstanding balance was paid.  (Id. at 3, ¶ 3(a).)  Additionally, Defendant granted Plaintiff a security interest in its assets and agreed to execute a "Security Agreement" setting forth the terms of that interest.  (Id. at 3, ¶ 3(c)); see also (Pl.'s Br. Supp. Mot. Summ. J., Ex. 6.) (granting Plaintiff a security interest in all accounts, equipment, and other miscellaneous property held by Defendant as collateral for the debts discussed in the Forbearance Agreement.)

The Forbearance Agreement included a series of factual recitals memorializing the parties' understanding of the circumstances that underlie this suit.  The portions of those recitals relevant to this ruling stated that:

(1) Plaintiff delivered resin to Defendant "on a continuing basis" since January 29, 2009;

(2)  Defendant agreed to pay for that resin as specified on the invoice attached to each shipment;

(3) Plaintiff duly included the required invoice with each shipment; and

(4) Defendant "failed to pay all amounts due and outstanding pursuant to the [i]nvoices … (the 'Payment Default')."

(Id. at 1.)

4

In addition to the recitals set forth above, the Forbearance Agreement included a series of "acknowledgements" by Defendant.  Specifically, Defendant admitted that (1) it "has no claim, defense or offset with respect to the quality, merchantability or suitability of any of the [resin it] received," and (2) Plaintiff "has the right to enforce all rights and remedies, at law or in equity, available to [Plaintiff] with respect to the amount due" for the resin sales.  (Id. at 2, ¶ 2(b), (d).) Most importantly, Defendant acknowledged that, as of the date of the Forbearance Agreement, it was "indebted to the [Plaintiff] in the amount of the Initial Outstanding Amount, subject to adjustment as per the Determination Procedure."  (Id. at 2, ¶ 2(a).)

Thus, the Forbearance Agreement – in both its recitals and acknowledgements – explicitly stated that Defendant failed to pay for at least some of the resin delivered by Plaintiff. The recitals did not, however, specify the exact amount of Defendant's liability.  Rather, they stated that:

> [Defendant] … owes [Plaintiff] an amount believed to be in excess of Six Million Dollars ($6,000,000.00) (the "Initial Outstanding Amount") plus any adjustments to such amount as determined at the conclusion of the "Determination Procedure" (as defined below) set forth … hereunder.

(Id. at 1.)

The "Determination Procedure" was set forth in a later section of the Forbearance Agreement, which stated that:

> Commencing immediately, the parties shall engage in a determination procedure … whereby the parties will mutually review all invoices and undertake a mutual accounting of all open invoices (the "Open Invoices"), copies of which shall be provided by [Plaintiff], together with supporting and corresponding (i) bills of lading and (ii) proof of delivery.  [Plaintiff] shall further provide a summary sheet listing each Open Invoice and the corresponding amounts due thereunder and/or payments received with respect thereto.  [Defendant] agrees to pay for all [resin] for which delivery is confirmed.

(Id. at 4, ¶ 4.)

In other words, the parties agreed that Defendant was liable for at least $6 million, but deferred the task of ascertaining the amount, if any, of Defendant's liability in excess of that sum.

By executing the Forbearance Agreement, Defendant also agreed to a broad waiver of any claims it might have asserted against Plaintiff.  That waiver stated:

> In consideration of the forbearance granted by [Plaintiff] pursuant to this Forbearance Agreement, [Defendant] hereby release[s] [Plaintiff], its successors and assigns, attorneys, agents, officers, directors and employees (collectively, the "Released Parties"), from any and all claims, damages or causes of action it has, had or may claim to have, at any time, against the Released Parties at any time from the beginning of time through the actual date of execution of this Forbearance Agreement…. The Released Parties shall not be liable or responsible to [Defendant] for any acts or omissions nor for any error or judgment or mistake, whether law or fact.

(Id. at 8, ¶ 13.)

Finally, the Forbearance Agreement provided that its terms superseded any prior understandings of the parties by stating:

> This Forbearance Agreement represents the entire agreement between the parties with respect to the subject matter hereof and thereof and supersedes all prior agreements and undertakings, both written and oral, with respect to the subject matter hereof and thereof.  This Forbearance Agreement may not be changed or modified unless done in writing and signed by the party(ies) to be charged.

(Id. at 10, ¶ 21.)

Despite the contentious allegations of non-payment and protracted negotiations that resulted in the Forbearance Agreement, Plaintiff and Defendant continued to do business after entering that contract.  In fact, Plaintiff began shipping more resin to Defendant on September 16, 2009, the day before Mr. Buchbut executed the Forbearance Agreement and its accompanying Security Agreement.  From that date until February 14, 2010, Plaintiff sent Defendant resin for which the invoices totaled $1,913,069.75.  Defendant paid $2,148,130.14 for those shipments – $235,060.039 more than their total price.  Accordingly, Plaintiff admits that

Defendant's liability for any payments it failed to make during the period covered by the Forbearance Agreement should be reduced by $235,060.039.  (Pl.'s Br. Supp. Mot. Summ. J. 6.)

From there, the parties' versions of the facts diverge.

Plaintiff contends that Defendant stopped making payments on January 22, 2010, and has not submitted any restitution for the $6 million Initial Outstanding Amount provided for under the Forbearance Agreement since that date.  Based on that development – which it contends constituted a breach of Defendant's duties under the Forbearance Agreement – Plaintiff filed this action on March 2, 2010.

In a second disputed allegation, Plaintiff contends that the parties completed the "Determination Procedure" called for under the Forbearance Agreement in October 2009.  As part of that procedure, Plaintiff alleges that Mr. Buchbut reviewed the outstanding invoices and agreed that Defendant owed $8,104,558.50.  Therefore, after factoring in the $235,060.39 in overpayments made by Defendant for shipments of resin after the parties entered the Forbearance Agreement, Plaintiffs seek to recover a total of $7,869,498.11.[2]  On the basis of those allegations, Plaintiffs assert several causes of action in their Complaint, all of which essentially seek to recover the unpaid funds or collateral assets – such as Defendant's manufacturing equipment – of comparable value.

Defendant, for its part, disputes virtually all of Plaintiff's factual allegations.  Its owner, Mr. Buchbut, submitted certifications in which he challenges the authenticity of the invoices on which Plaintiff relies to establish the total amount it is owed – noting in particular that some

---

[2] The exact amount claimed by Plaintiff has varied slightly during the course of this litigation, perhaps due to the accrual of interest or some other factor not explicitly pointed out in the papers. In its Complaint, Plaintiff stated that it was owed $7,973,242.51.  In its filings relating to the pending Motion, Plaintiffs revised that amount to $7,869,498.41, reflecting non-payment on $8,104,558.50 minus the $235,060.39 credit.  That calculation includes an error of 30 cents: $8,104,558.50 − $235,060.39 = $7,869,498.11.  For the sake of simplicity, the Court will use the $7,869,498.11 figure when discussing Plaintiff's claimed damages.

invoices do not appear to be addressed to Defendant.  (March 10, 2010 Certification of Michel

Buchbut ("Buchbut Cert.") ¶ 21.)  Additionally, while Mr. Buchbut admits that he signed the

Forbearance Agreement and Security Agreement, he argues that the Court should ignore those

contracts.  In doing so, he states that he "had significant suspicions regarding the amounts

allegedly owed" at the time he executed the agreements.  (Id. ¶ 24.)  He contends that he was

"overwhelmed" and "executed the documents without fully reading" them.  (Id. at ¶ 25.)  Rather,

Mr. Buchbut relies on purported oral representations made during the negotiations between the

parties, stating:

> It was <u>always</u> my understanding based on my negotiations with Plaintiff that the
> Forbearance Agreement merely agreed that it was "believed" by Plaintiff that
> several million dollars were owed, and that [Defendant] would enter into a
> payment plan with Plaintiff <u>after</u> Plaintiff provided a full accounting of all
> invoices outstanding.

(Id. at ¶ 26) (emphasis in original.)

Based on those contentions, Defendant asserted several affirmative defenses and

counterclaims in its Answer.  The entirety of the information included in Defendant's affirmative

defenses is as follows:

(1) [Plaintiff] fails to state a claim upon which relief can be granted.

(2) [Plaintiff's] claims are barred or reduced by reason of its failure to mitigate its alleged
damages.

(3) [Plaintiff's] claims are barred or reduced by application of one or more of the
doctrines of waiver, laches, ratification, estoppel, release and/or unclean hands.

(4) [Plaintiff] has no ascertainable or recoverable damages.

(5) [Plaintiff] has failed to adequately plead [his] claims, including fraud, with sufficient
particularity.[3]

---

[3] Plaintiff does not assert a fraud claim.  Defendant's assertion otherwise leads the Court to
believe its affirmative defenses, rather than being tailored to this action, are simply a rote
recitation of those that might be available in any given case.

(6) [Plaintiff's] damages, if any, were not caused by any conduct of [Defendant].

(Answer at 8, ¶¶ 1-6.)

In its counterclaims, Defendant alleges that Plaintiff "made multiple verbal and written arrangements … regarding payment for materials."  (Answer at 9, ¶ 6.)  In the next paragraph, however, Defendant inexplicably claims that "[n]o formal written protocol was ever followed" with respect to payment.  (Answer at 9, ¶ 7.)  It then claims that Plaintiff "conducted [itself] in an adverse manner, in direct contravention of the business relationship" between the parties and that it was damaged as a result.  (Answer at 9-10, ¶¶ 8-9.)  Based on those allegations, Defendant asserts counterclaims for (1) breach of the duty of good faith and fair dealing, (2) breach of fiduciary duty, (3) tortious interference, (4) fraud, (5) "economic coercion/distress," (6) "public disclosure of private debt," (7) false light, (8) conspiracy, and (9) conversion and/or unjust enrichment.  Defendant's Answer also included a Third-Party Complaint in which it asserts each of those nine causes of action against its former Chief Financial Officer, Effraim Gordon, and James Dion, an independent contractor that assisted with its finances.

## II. DISCUSSION

As discussed above, there are currently two Motions before the Court.  In the first, Plaintiff (1) requests summary judgment pursuant to Federal Rule of Civil Procedure 56(a), (2) argues that Defendant's affirmative defenses should be stricken pursuant to Federal Rule of Civil Procedure 12(f), and (3) contends that Defendant's counterclaims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  In the second pending Motion, Third-Party Defendant James Dion requests similar relief – namely, dismissal under Rule 12(b)(6) of the third-party claims asserted against him by Defendant.

Plaintiff's request for summary judgment implicates a different standard of review than the portions of the pending motions seeking dismissal of Defendant's counterclaims and third-party claims. Therefore, for the sake of simplicity the Court will address the section of Plaintiff's Motion governed by Rule 56(a) before turning to the requests for dismissal pursuant to Rule 12(b)(6).

## A.  Motion for Summary Judgment

In his pending Motion for Summary Judgment, Plaintiff argues that the evidence in the record – which includes the Forbearance Agreement, and numerous invoices submitted as documentary exhibits – conclusively establishes that Defendant is liable for the amount of $7,869,498.11.  As discussed above, Defendant disputes Plaintiff's version of the facts, and notes that several of the invoices on which Plaintiff relies appear to be addressed to other companies.[4]

### i.      Standard of Review

Summary judgment is proper where "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  For a fact to be material, it must have the ability to "affect the outcome of the suit under governing

---

[4] While Plaintiff's Motion for Summary Judgment was pending, Defendant submitted a separate Motion for a Continuance, purportedly pursuant to Federal Rule of Civil Procedure 56(f).  Prior to recent amendments, which took effect on December 1st of this year, Rule 56(f) allowed a non-moving party to request that the Court deny or defer consideration of a motion for summary judgment if the non-moving party demonstrates that it "cannot present facts essential to justify its opposition" due to the moving party's failure to provide discovery.  The substance of that provision has not been altered by the new version of the Rules, but now appears at Rule 56(d). Regardless of whether one refers to the former Rule 56(f) or the new Rule 56(d), Defendant's reliance on those provisions is unavailing.  As discussed above, the Court's decision to grant partial summary judgment in favor of Plaintiff is compelled by the terms of the Forbearance Agreement, and those terms may not be altered by any parol evidence adduced during further discovery.  Therefore, Defendant's Motion for a Continuance is denied.

law." Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325.  If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine fact issue exists and a trial is necessary.  Id. at 324.  In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party.  See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  If there are no issues that require a trial, then judgment as a matter of law is appropriate.  Id. at 251-52.

### ii.    *Plaintiff's Motion*

Under that standard, Plaintiff is entitled to partial summary judgment on his claims against Defendant.  This case presents a rare instance in which one party has admitted to liability by memorializing its obligations to the other in the form of a legally-binding contract.  In fact, Defendant admitted its liability in two different sections of the Forbearance Agreement.  In the recitals, it stated that it had "failed to pay all amounts due and outstanding" for the resin shipped

11

by Plaintiff.  (Pl.'s Br. Supp. Mot. Summ. J., Ex. 5 at 1.)  The Forbearance Agreement then set

$6,000,000 – the "Initial Outstanding Amount" – as the minimum level of Defendant's liability.

(Id.)

Defendant argues, both in Mr. Buchbut's certifications and in its briefs relating to the

pending Motions, that the Forbearance Agreement should be "set aside."  (Def.'s Br. Opp'n Mot.

Summ. J. 14.)  However, it does not point to any circumstances that would make it reasonable

for the Court to ignore the terms of that contract.  For instance, Defendant does not contend that

the Forbearance Agreement is unenforceable because it is either procedurally or substantively

unconscionable.[5]  Nor does it claim that Mr. Buchbut was incapable of understanding the terms

of that contract.  Rather, Defendant simply asserts that the Court should disregard the

Forbearance Agreement because Mr. Buchbut (1) did not "fully read" its terms, (2) "had

significant suspicions regarding the amounts allegedly owed" at the time he executed that

contract, and (3) was under the impression based on pre-contractual oral representations that the

Forbearance Agreement simply stated that Defendant might be liable to Plaintiff.  (Buchbut Cert.

¶¶ 24-26.)

The first of those three contentions is no defense to contractual liability.  See, e.g., Arnav

Indus., Inc. Ret. Trust v. Brown, Raysman, Millstein, Felder & Steiner, LLP, 751 N.E.2d 936,

939 (N.Y. 2001) ("[A] party who signs a document is conclusively bound by its terms absent a

---

[5] Such a contention would be futile.  There is no indication that Mr. Buchbut executed the
Forbearance Agreement under duress or was otherwise unable to bargain.  To the contrary, he
alleges in his certification that he is a sophisticated businessman and manages a business that
employs some 300 people.  Thus, there was no imbalance of bargaining power between the
parties to the Forbearance Agreement.  Moreover, the terms of that Agreement are not
substantively unconscionable; they do not impose overly-burdensome duties on Defendant.
Rather, they simply require that Defendant pay Plaintiff for the resin shipments at issue, while
setting forth a payment schedule and procedure for determining the amount of liability.  The
consideration for those duties – Plaintiff's promise to refrain from bringing legal action, was
sufficiently valuable to foreclose any contention that the contract is substantively
unconscionable.

valid excuse for having failed to read it."); Martin v. Citibank, N.A., 883 N.Y.S.2d 483, 485

(N.Y. App. Div. 2009) ("[A] party's failure to read a contract does not excuse him or her from its

terms.").[6]

The second of Defendant's arguments is a post-hoc rationalization that does nothing to

alter the force of Defendant's clear admission in the Forbearance Agreement that it was liable to

Plaintiff for at least $6 million.  See (Pl.'s Br. Supp. Mot. Summ. J., Ex. 5 at 1) (stating that

Defendant "failed to pay all amounts due and outstanding" for the resin shipped by Plaintiff and

setting a minimum liability of $6,000,000).   If Mr. Buchbut had doubts about the existence of or

amount of that liability, he should not have executed the contract, as it would have been clear to

any reasonable reader that doing so constituted an admission of liability.

The third of the three aforementioned contentions impermissibly relies on parol evidence

that is barred by the express terms of the Forbearance Agreement and applicable law.  The

Forbearance Agreement included a so-called "merger clause," which stated that "[t]his

Forbearance Agreement represents the entire agreement between the parties with respect to the

subject matter hereof and thereof and supersedes all prior agreements and undertakings, both

written and oral…."  (Id. at 10, ¶ 21.)  It is well-established that:

> The purpose of a merger clause is to require full application of the parol evidence
> rule in order to bar the introduction of extrinsic evidence to alter, vary, or
> contradict the terms of the writing.  The merger clause accomplishes this purpose
> by evincing the parties' intent that the agreement is to be considered a completely
> integrated writing.

Jarecki v. Shung Moo Louie, 745 N.E.2d 1006, 1009 (N.Y. 2001).

The merger clause contained in the Forbearance Agreement did just that – it clearly stated that

the Agreement's terms would supersede any prior understandings between the parties and would

---

[6] The Forbearance Agreement specified that it would be governed by New York law.  (Pl.'s Br.
Supp. Mot. Summ. J., Ex. 5 at 9, ¶ 17.)  Therefore, the Court will cite to case law from that state
when discussing the enforceability or proper construction of its terms.

constitute the complete statement of their respective obligations.  Therefore, Mr. Buchbut's
reliance on oral representations is unavailing, and cannot be used to alter or expand the
Forbearance Agreement's express terms, which provide that Defendant is liable to Plaintiff for a
minimum of $6 million.

  The Forbearance Agreement does not, however, shed light on the amount of any liability
in excess of that amount.  To the contrary, by its express terms the Forbearance Agreement
requires that the parties review the invoices for resin shipments made between January 29, 2008
to May 22, 2009 and come to an agreement about the exact amount of  Defendant's liability.
Plaintiff alleges in connection with the pending Motion that Defendant owes $7,869,498.11, but
Mr. Buchbut's certifications dispute that calculation.  In doing so, Mr. Buchbut notes that several
of the invoices in question appear to be addressed to some entity other than Defendant.  That
allegation is sufficient to raise a genuine dispute of fact as to the amount of Defendant's liability
in excess of the Initial Payment Obligation set forth in the Forbearance Agreement.  Therefore,
the Court may not grant summary judgment in favor of Plaintiff in excess of that amount.
Celotex Corp. v. Catrett, 477 U.S. at 323.

  Moreover, Plaintiff concedes that the $6 million in minimum liability specified by the
Forbearance Agreement must be reduced by $235,060.39 – the amount Defendant overpaid for
its later purchases.  (Pl.'s Br. Supp. Mot. Summ. J. 6.)  Therefore, summary judgment will be
entered in favor of Plaintiff in the amount of $5,764,939.61.  Plaintiff may proceed with his
claim for payments in excess of that amount, but is not entitled to summary judgment on that
claim in light of the material disputes of fact outlined above.

**B.  Motion to Strike Affirmative Defenses**

The affirmative defenses contained in Defendant's Answer serve two purposes:  they either (1) dispute that Defendant is liable to Plaintiff for any amount or (2) argue that liability should be reduced.  Having ruled that Defendant is liable to Plaintiff for at least the amount specified in the Forbearance Agreement – minus any subsequent overpayments – the Court has already impliedly rejected the first.

The second purpose of Defendant's affirmative defenses – reducing its liability to Plaintiff – is equally unavailing.  As discussed above, the Defendant specifically acknowledged by executing the Forbearance Agreement that (1) it "has no claim, defense or offset with respect to the quality, merchantability or suitability of any of the [resin it] received," and (2) Plaintiff "has the right to enforce all rights and remedies, at law or in equity, available to [Plaintiff] with respect to the amount due" for the resin sales.  (Id. at 2, ¶ 2(b), (d).)  Those acknowledgments constituted a waiver of affirmative defenses that might be used to prevent, either in whole or in part, Plaintiff from enforcing its right to payment once the parties ascertained the amount of Defendant's liability.  Therefore, Plaintiff's request that Defendant's affirmative defenses be stricken is granted.

**C.  Motion to Dismiss Counterclaims and Third-Party Claims**

Plaintiff argues that the counterclaims asserted against him should be dismissed because those counterclaims are not pled with the requisite particularity.  Third-Party Defendant Dion makes a similar argument with respect to the claims asserted against him by Defendant.  In assessing those contentions, the Court must apply the standard of review applicable to requests for dismissal.

*i.*    ***Standard of Review***

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim or counterclaim for failure to state a basis upon which relief can be granted.  When considering a Rule 12(b)(6) motion, the court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court's inquiry, however, "is not whether [the non-moving party] will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims."  In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the Rule 12(b)(6) standard in two cases:  Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a [claim] should not be dismissed for failure to state a claim unless it appears beyond doubt that the non-moving party can prove no set of facts in support of his claim, which would entitle him to relief."  In contrast, Bell Atlantic, 550 U.S. at 545, held that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Thus, the factual assertions must be enough to "state a claim to relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged."  Iqbal, 129 S. Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (In order to survive a motion to dismiss, the factual allegations supporting a claim must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a claim or counterclaim, the Court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949. Although for the purposes of a motion to dismiss the Court must assume the veracity of the facts asserted, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950.  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

When a claim or counterclaim is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), leave to amend and reassert that claim is ordinarily granted.  In re Burlington Coat Factory Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  A claim may be dismissed with prejudice, however, if amendment would be futile.  Id.  "Futile," as used in this context, means that the pleading could not be amended to state a legally-cognizable claim.  Id. (citing Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996)).

### ii.    *Plaintiff's Motion*

Defendant's counterclaims against Plaintiff must be dismissed for two reasons:  (1) they are not pled with the requisite particularity and (2) are barred because Defendant waived its right to bring such claims by executing the Forbearance Agreement.

As discussed above, Defendant's counterclaims rely on two main "allegations common to all counts."  The first asserts that P Plaintiff "made multiple verbal and written arrangements … regarding payment for materials."  (Answer at 9, ¶ 6.)  The second claims that Plaintiff "conducted [itself] in an adverse manner, in direct contravention of the business relationship"

17

between the parties and that it was damaged as a result.  (Answer at 9-10, ¶¶ 8-9.)  Defendant's

Answer does not elaborate on how the Plaintiff conducted itself in an "adverse manner" by

pointing out any specific action taken by Plaintiff that violated either statutory or common law.[7]

Nor does it include any information relating to when Plaintiff's allegedly-wrongful actions took

place, how they related to the business relationship between the parties, or why they were

wrongful.

      The allegations contained in each of Defendant's nine counterclaims shed no light on

those questions.  For example, Defendant's first counterclaim – for breach of the duty of good

faith and fair dealing – simply alleges (1) that Plaintiff and Defendant "entered into several

verbal and written agreements" during their relationship, (2) that "[t]he law imposes an

obligation of good faith and fair dealing" on parties to such agreements, and (3) that "[a]s

discussed above, [Plaintiff's] conduct constitutes a breach of" that duty.  (Answer at 10, ¶¶ 12-

14.)  In other words, the only part of Defendant's breach of the duty of good faith and fair

dealing claim that is not a rote recitation of elements of that cause of action is a reference to the

conclusory allegation that Plaintiff acted "in an adverse manner" which was "discussed above."

Therefore, that counterclaim must be dismissed.  Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements" are not sufficient

to state a claim.).

      Each of Defendant's other eight counterclaims suffers from the same deficiency.

Defendant's second counterclaim – for breach of fiduciary duty – alleges simply (1) that Plaintiff

---

[7] In its papers relating to the pending Motions, Defendant contends that Plaintiff colluded with
certain of its employees in some unspecified way.  Those contentions fall outside the pleadings
and therefore cannot be considered in connection with the pending Motions to Dismiss.
Moreover, they are so lacking in specificity – they rely only on conclusory allegations of "bad
faith" and do not point to any specific action taken by any party that violated Defendant's rights
– that they could not form a proper basis for Defendant's claims even if they were included in the
Answer.

"owe[d] certain fiduciary duties to [Defendant] arising from the agreements (oral and written) between the parties," and (2) that "[Plaintiff's] conduct constitutes a breach of that duty." (Answer at 11, ¶¶ 17-18.)  Its third counterclaim – for tortious interference – is even more sparse, stating simply that "[a]s discussed above, [Plaintiff's] conduct has intentionally and directly interfered with [Defendant's] business."  (Answer at 12, ¶ 21.)  Each of the remaining counterclaims is similarly lacking in detail.  Therefore, those counterclaims must be dismissed. See Iqbal, 129 S. Ct. at 1949.

Normally, Defendant would be entitled to amend and reassert its counterclaims in order to cure the deficiencies in its pleading.  See Burlington Coat Factory Litig., 114 F.3d at 1434.  It would be largely futile to do so in this case, however, because Defendant explicitly waived all claims against Plaintiff that arose prior to the execution of the Forbearance Agreement by entering that Agreement.  (Pl.'s Br. Supp. Mot. Summ. J., Ex. 5, ¶ 13) ("[Defendant] hereby releases [Plaintiff] … from any and all claims, damages or cause of action it has, had or may claim to have, at any time … from the beginning of time through the actual date of execution of this Forbearance Agreement.").  In light of that waiver, Defendant's counterclaims must be dismissed with prejudice to the extent they rely on activities by Plaintiff that pre-dated September 17, 2009, the date Mr. Buchbut executed the Forbearance Agreement.  Defendant will be granted leave to amend and reassert its counterclaims to the extent that they arise out of actions that took place after that date.  In doing so, Defendant must limit its allegations to those that can be made in good faith, and must allege wrongdoing on the part of Plaintiff with sufficient particularity to state a cognizable claim under the pleading standards applicable to each cause of action.

### iii.    Mr. Dion's Motion

Similarly, Defendant's third-party claims against Mr. Dion must be dismissed.  Those claims are substantially identical to the counterclaims asserted against Plaintiff, but with one notable exception:  they remove even the conclusory assertion of "adverse" behavior.  Instead, Defendant's third-party claims against Mr. Dion simply state that he "is a prior independent contractor … who performed certain professional and financial services."  (Answer at 17, ¶ 4.) They then launch directly into a "[t]hreadbare recitals of the elements of [Defendant's various] cause[s] of action."  Iqbal, 129 S. Ct. at 1949.

Defendant's first third-party claim against Mr. Dion – for "breach of loyalty" – asserts simply that (1) "Dion had an inherent duty of loyalty to [Defendant]" and (2) "[t]hrough [his] conduct, … breached that duty of loyalty."  (Answer at 18, ¶¶ 10-11.)  The Defendant's allegations do not identify the nature of the allegedly-wrongful conduct, state when it occurred, or include any information as to why it was wrongful.

Defendant's remaining claims against Mr. Dion – for (1) breach of the duty of good faith and fair dealing, (2) breach of fiduciary duty, (3) tortious interference, (4) fraud, (5) false light, (6) conspiracy, and (7) conversion/unjust enrichment – assert exactly the same allegations as its counterclaims against Plaintiff, but substitute Mr. Dion's name.  Having already ruled that the allegations in Defendant's counterclaims are insufficient, the Court will dismiss its third-party claims against Mr. Dion for the same reason.  Defendant may submit an Amended Third-Party Complaint within 30 days of the date of this ruling curing, if it is able to do so, the deficiencies in those claims.[8]

---

[8] The waiver contained in the Forbearance Agreement applied only to Plaintiff and its employees.  (Pl.'s Br. Supp. Mot. Summ. J., Ex. 5, ¶ 13.)  Therefore, Defendant's amended third-party claims against Mr. Dion may be premised on activity that occurred at any point during the period relevant to this litigation.

### III.  CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is granted in part and denied in part.  Judgment against Defendant in favor of Plaintiff is entered in the amount of $5,764,939.61.  Plaintiffs may proceed with their claims based on any debt incurred by Defendant in excess of that sum, but in light of the material disputes of fact that remain as to the exact amount of that debt, summary judgment on those claims is not appropriate at this stage of the proceedings.

Plaintiff's Motion to Dismiss Defendant's counterclaims is granted.  Defendant's counterclaims are dismissed with prejudice to the extent that they rely on activity that occurred prior to September 17, 2009, and are dismissed without prejudice to the extent that they rely on activity that occurred after that date.  Defendant may amend and resubmit its counterclaims within 30 days of this ruling, but in doing so must limit its allegations to activity that took place after September 17, 2009.

Third-Party Defendant Dion's Motion to Dismiss the claims asserted against him by Defendant is granted.  Defendant may submit an Amended Third-Party Complaint curing, if it is able to do so, the deficiencies in those claims within 30 days of the date of this ruling.

Defendant's Motion for a Continuance is denied.

The Court will enter an Order implementing this Opinion.


 **s/ Dickinson R. Debevoise_____**
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:  December 17, 2010

21